RECEIVED
2020 OCT 23 A 11: 21
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
Eastern Division

**SCOTT EATON,**

**Plaintiff,**

**v.**

**WESTROCK COMPANY,**

**Defendant.**

**3:20-cv-00860**
**CIVIL ACTION NO. __________**

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant WestRock Company ("WestRock") files this Notice of Removal to remove this action from the Circuit Court of Russell County, Alabama, where it was filed as CV-2020-900219, to the United States District Court for the Middle District of Alabama. To support, WestRock states as follows:

**BACKGROUND**

1. On September 14, 2020, Plaintiff Scott Eaton ("Plaintiff") filed a Complaint in the Circuit Court of Russell County, Alabama styled as *Scott Eaton v. WestRock Company*, Civil Action No. CV-2020-900219. A true and correct copy of the entire state court file is attached as Exhibit A.

2. Plaintiff asserts claims against WestRock for negligence, wantonness, and failure to warn. Compl. at ¶¶ 7-16 (Ex. A).

3. His claims arise out of a February 27, 2019 incident at a mill in Cottonton, Alabama that is operated by one of WestRock's indirect subsidiaries. *Id.* at ¶¶ 3-4. Plaintiff alleges he slipped in sodium hydroxide that had been spilled in the area. *Id.* at ¶ 4. According to the Complaint, WestRock's purported negligence and wantonness led to Plaintiff falling and being severely burned, which he more specifically describes as third degree burns, on his right leg. *Id.* at ¶¶ 5, 12, 16. He says these are permanent injuries that left him permanently scarred and disfigured. *Id.* at ¶¶ 12, 16.

4. Plaintiff seeks an unspecified amount of compensatory and punitive damages for his claims. *Id.* at p 3. He nevertheless contends he is entitled to an award compensating him for the medical expenses, physical pain and mental anguish he endured in the past and will continue enduring into the future, past and future lost wages, and impairment to his ability to engage in normal activities. *Id.* at ¶¶ 12, 16.

5. WestRock received a copy of the state court summons and complaint at the Cottonton Mill via certified mail on September 25, 2020.[1] *See* Return of Service (Ex. A).

[1] Although WestRock received a copy of the summons and complaint, Plaintiff has not perfected service on WestRock yet. First, WestRock is not located at the Cottonton mill. Maxwell Decl. at ¶¶ 3-4 (Ex. B). That mill is operated by one of WestRock's indirect subsidiaries, WestRock Coated Board, LLC, and the subsidiary is not authorized to accept service on WestRock's behalf. *Id.* at ¶¶ 4-5. Second, the summons and complaint were directed generally to "WestRock Company" rather than a person as required by the Alabama Rules of Civil Procedure. For corporations and other entities, the summons and complaint must be served on either an officer, partner other than a limited partner, managing or general agent, or agent that has been appointed

6. Notwithstanding that Plaintiff filed his complaint in state court, this action could have been originally filed in federal court pursuant to 28 U.S.C. § 1332 due to there being complete diversity of citizenship between Plaintiff and WestRock and the amount in controversy exceeding $75,000, exclusive of interest and costs.

7. This action therefore may be properly removed under 28 U.S.C. § 1441(a).

**DIVERSITY OF CITIZENSHIP**

8. Upon information and belief, Plaintiff is a citizen and resident of the State of North Carolina. Compl. at ¶ 1 (Ex. A).

9. WestRock is a Delaware corporation with its headquarters and principal place of business in Georgia. Maxwell Decl. at ¶ 3 (Ex. B). WestRock is thus a citizen of Delaware and Georgia for jurisdictional purposes. *See* 28 U.S.C. § 1332(c)(1) (for diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . ."); *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) ("We conclude that 'principal place of

---

by the entity or by law to accept service of process on the entity's behalf. Ala. R. Civ. P. 4(c)(6). This means that if the summons and complaint are served by certified mail, as they were here, they "must be directed to the registered or appointed agent or to a specific person, such as an 'officer.'" Ala. R. Civ. P. 4, 2004 Amendment Committee Comments; *cf. Med-Call, Inc. v. Livingston*, 64 So. 3d 1051, 1054 (Ala. Civ. App. 2010) (holding that service was not properly perfected on a corporate defendant when it was not served upon "one of the persons specified in Rule 4(c)(6)"). Because Plaintiff did not do so, he has not perfected service on WestRock.

business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters . . . ."). In other words, WestRock is not now, and was not at the time of the filing of the Complaint, a citizen of the State of Alabama or the State of North Carolina within the meaning of the Acts of Congress related to the removal of cases.

10. Because Plaintiff and WestRock are citizens of different states there is complete diversity of citizenship for removal purposes.

## AMOUNT IN CONTROVERSY

### I. Plaintiff's claims place more than $75,000 exclusive of interests and costs in controversy.

11. For a federal court to have subject matter jurisdiction based on the diverse citizenship of the parties, the amount in controversy must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). In cases where the complaint does not specify the amount of damages being claimed,

> 'removal from state court is [jurisdictionally] proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement . . . . If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed.'

*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) (quoting *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001)).

12. When assessing the amount in controversy, courts do not have to "suspend reality or shelve common sense" to determine whether the jurisdictional minimum is met. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010). They may instead rely on "their judicial experience and common sense" in addition to making "'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings" to determine the propriety of exercising jurisdiction over the case. *Id.* at 1061-62. If common sense and judicial experience demonstrate the amount in controversy is satisfied, even though it may "not [be] absolutely clear, 'federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" *Culpepper v. Stryker Corp.*, 968 F. Supp. 2d 1144, 1150 (M.D. Ala. 2013).

13. A review of Plaintiff's allegations with these principles in mind demonstrates more than $75,000 is at issue in this litigation even though Plaintiff did not specify an amount in the Complaint.

14. Plaintiff contends he suffered significant and permanent physical injuries, including third degree burns to his right leg. Plaintiff alleges he suffered physical pain and mental anguish, incurred medical expenses, lost income, and could not engage in normal activities as a result of his injuries:

> As a proximate consequence of [WestRock's] negligent and/or wanton conduct, [Plaintiff] fell in the hazardous chemical and was caused to suffer the following injuries and damages: third-degree burns to his right leg; medical expenses; physical pain and mental anguish and will continue to do so in the future; permanent scarring and disfigurement; he has lost income and will continue to lose income in the future; his ability to continue normal activities was impaired and will be impaired in the future; he suffered permanent injury; and, was otherwise injured and damaged.

Compl. at ¶¶ 12, 16 (Ex. A). A plaintiff asserting claims related to injuries such as these could recover in excess of $75,000. This is especially true in light of the facts associated with the incident and Plaintiff's allegation that he has been permanently disabled and disfigured. *See Mallory v. Biomet, Inc.*, No. 2:14cv984-SRW, 2014 WL 6890740, at *1 n.1 ("Based on the plaintiff's allegations, particularly those of permanent disability and disfigurement, the court concludes that it is facially apparent from the complaint that the amount in controversy exceeds that required to support the court's exercising diversity jurisdiction, even excluding consideration of punitive damages.").

15. Plaintiff says he sustained third degree burns to his right leg. *See* Compl. at ¶¶ 12, 16 (Ex. A). Third degree burns are the most severe of all burns. *See What are the Classifications of Burns?*, Stanford Health Care, *available at* www.stanfordhealthcare.org/medical-conditions/skin-hair-and-nails/burns/stages. html (last visited Oct. 20, 2020). Third degree burns "destroy the epidermis and dermis" and "may also damage the underlying bones, muscles, and tendons. The

burn site appears white or charred. There is no sensation in the area since the nerve endings are destroyed." *Id.* Third degree burns often must be treated with skin grafts to close the wounds. *Third-degree burn*, Mayo Clinic, *available at* www.mayoclinic.org/diseases-conditions/burns/multimedia/third-degree-burn/img-20006133 (last visited Oct. 20, 2020).

16. As of December 2019, almost one year after the incident, Plaintiff was still receiving medical treatment for his injuries and had not been able to return to work. Sadler Decl. at ¶ 3 (Ex. C).

17. As part of his continuing medical treatment, Plaintiff underwent surgery for his injuries.

18. Against this backdrop, common sense and judicial experience dictate more than $75,000 is put in controversy by Plaintiff's claims.

19. That Plaintiff is seeking more than $75,000 in damages is further demonstrated by his wantonness claim, which could support an award of punitive damages under Alabama law.[2] *See* Ala. Code § 6-11-20(a) (allowing courts to award punitive damages for wantonness claims provided the claim is established by clear and convincing evidence). It is well-settled that courts must consider punitive damages in addition to compensatory damages when calculating the amount in controversy. *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531,

---

[2] Although the determination of the amount in controversy is a matter of federal law, district courts may nonetheless look to state law to the extent it is relevant to defining the nature and

1535 (11th Cir. 1987). They may likewise consider awards in cases involving the same type of suit to determine the amount in controversy. *See Bolling v. Union Nat'l Life Ins. Co.*, 900 F. Supp. 400, 404 (M.D. Ala. 1995); *see also Henry v. Nationwide Ins. Co.*, No. 06-0612-CV-M, 2007 WL 2409817, at *2 (S.D. Ala. Aug. 22, 2007).

20. Plaintiffs in Alabama routinely settle their claims or receive awards that far exceed the amount in controversy required for diversity jurisdiction in third degree burn cases. *See, e.g.*, *Jackson v. QHG of Ala., Inc.*, No. CV-02-389 L, 2003 WL 24054508 (Cir. Ct. Houston County, Ala. Jun. 11, 2003) (plaintiff obtained $125,000 verdict on claims arising from third degree burns on right upper arm); *Bolton v. J.C. Duke & Assocs. Gen. Contractors, Inc.*, No. CV-01-3329, 2003 WL 24054203 (Cir. Ct. Mobile County, Ala. Feb. 18, 2003) (plaintiff obtained $9,500,000 verdict on claims related to third degree burns and severe disfigurement to hands, arms, torso, and legs); *Burnett v. Cranford*, No. CV-90-204, 1990 WL 460775 (Cir. Ct. Shelby County, Ala.) (the parties settled a lawsuit related to an eighteen-month old child suffering third degree burns for $252,400).

21. Given the nature of Plaintiff's claims, alleged permanent injuries and disfigurement, and his request for compensatory and punitive damages, there can be no question there is more than $75,000 in controversy in this dispute.

---

degree of the right sought to be enforced. *Broughton v. Fla. Int'l Underwriters, Inc.*, 139 F.3d 861, 863 (11th Cir. 1998).

**II. If there is any question regarding the amount in controversy, WestRock should be granted leave to conduct jurisdictional discovery to support its argument that the Court has subject matter jurisdiction over this case.**

22. While WestRock alleges all jurisdictional requirements are satisfied and has submitted sufficient information and evidence in support of its position, WestRock should be granted leave to conduct jurisdictional discovery prior to any order remanding this case to state court.

23. In 2011, Congress clarified the procedure for determining the amount in controversy when it is challenged after a removal. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). The House Judiciary Committee explained and the Supreme Court has since recognized, that under that procedure "'[d]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met. Discovery may be taken with regard to that question.'" *Id.* (quoting H.R. Rep. No. 112-10, at 16 (2011)). As a result, it is not surprising that courts in this district hold that "binding Supreme Court authority mandates that the court must afford the defendant an opportunity to gather evidence to support its allegations as to the value of [the plaintiff's claims] and, following a period of limited discovery, the court must decide whether the amount in controversy requirement is satisfied based on a preponderance of the evidence." Mem. Opinion & Order, Doc. 35, *Montgomery Kidney Specialists, LLP*

*v. Physicians Choice Dialysis of Ala., LLC*, No. 2:17-cv-00668, at 5 (Jun. 18, 2018).

24. WestRock accordingly requests that the Court grant it leave to conduct jurisdictional discovery on the amount in controversy and present additional evidence before any order remanding this case to state court.

**REMOVAL PROCEDURES**

25. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) because it was filed before WestRock was properly served with the state court Summons and Complaint.

26. Removal to the United States District Court for the Middle District of Alabama is proper under 28 U.S.C. § 1441(b) as Russell County—where the state court action was originally filed and pending—is within the Middle District of Alabama. *See* 28 U.S.C. § 81(b)(3).

27. WestRock will serve this Notice of Removal on counsel for all adverse parties as required by 28 U.S.C. § 1446(d).

28. WestRock will promptly file a written Notice of Filing Notice of Removal, with a copy of this Notice of Removal attached, with the Clerk of the Circuit Court of Russell County, Alabama. Additionally, WestRock will serve the Notice of Filing on counsel for all adverse parties.

29. The allegations of this Notice of Removal are true and correct.

30. By filing this Notice of Removal, WestRock does not waive any defense that it may have available to it including, but not limited to, those in Rule 12(b) of the Federal Rules of Civil Procedure.

WHEREFORE, WestRock respectfully gives notice that this action has been removed from the Circuit Court of Russell County, Alabama to the United States District Court for the Middle District of Alabama, being the district for the county in which this action is pending, and requests that this action proceed as properly removed to this Court. If any questions arise as to the propriety of the removal of this action, WestRock requests the opportunity to conduct limited jurisdictional discovery, submit a brief, and present oral argument to support its position that this case was properly removed.

Respectfully submitted,

John A. Earnhardt
Evan P. Moltz
Attorneys for WestRock Company

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
Suite 1700
Birmingham, AL 35203-2618
Telephone: 205.254.1000
Fax: 205.254.1999
Email: jearnhardt@maynardcooper.com

emoltz@maynardcooper.com

**CERTIFICATE OF SERVICE**

I hereby certify I served on this the 23rd day of October 2020, the foregoing on all counsel of record via email and/or U.S. mail at the following address:

Evan G. Allen
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36104
evan.allen@beasleyallen.com

OF COUNSEL