IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| SCOTT EATON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. |
| WESTROCK COATED BOARD, LLC, | ) 3:20-cv-00860-SMD |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**WESTROCK COATED BOARD, LLC'S REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant WestRock Coated Board, LLC ("WestRock") respectfully submits this brief as additional support of its Motion for Summary Judgment (Doc. 20). In further support of its motion, and without waiving or withdrawing any argument previously made, WestRock states as follows:

**INTRODUCTION**

Each of WestRock's arguments provides sufficient grounds for entering summary judgment in WestRock's favor. Plaintiff Scott Eaton's ("Plaintiff") response brief (Doc. 25) does nothing to suggest otherwise. It instead is procedurally and substantively flawed and demonstrates that WestRock's motion should be granted.

Plaintiff's response fails to properly dispute the enumerated facts contained in WestRock's opening brief. *See* Pl.'s Br. at pp. 2-4 (Doc. 25); First Amend. Uniform Scheduling Order § 2 (Doc. 14) ("Failure to indicate that a particular fact is disputed will result in the undersigned assuming the fact is undisputed for purposes of summary judgment."). WestRock, as a result, set out undisputed facts in its supporting brief that establish its entitlement to summary judgment on Plaintiff's negligence and wantonness claims.

Those undisputed facts are especially compelling when viewed against the backdrop of a correct statement of Alabama's premises liability law. The law, which does not concern itself with a defendant's anticipation of injury or a plaintiff not consciously appreciating the risk, dictates that the alleged hazard here was open and obvious. Plaintiff accordingly cannot recover on his premises liability claims however they are styled. He likewise cannot recover on his claims given that WestRock sufficiently warned Plaintiff and his employer of the alleged hazard.

## RESPONSE TO PLAINTIFF'S FACTS

Plaintiff begins his response brief by setting out a narrative statement of facts that he says prevents the Court from entering summary judgment for WestRock in this case. *See* Pl.'s Br. at pp. 2-4 (Doc. 25). Many of the facts he recites, though, are immaterial to WestRock's summary judgment arguments and appear to have been included to support Plaintiff's incorrect belief that his alleged failure to subjectively

appreciate the risk plays a role in the open and obvious analysis. The immateriality of Plaintiff's additional facts means they have no bearing on the outcome of WestRock's motion and may be disregarded. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). The key facts that matter are:

1. Plaintiff saw the puddle before he stepped in it. Eaton Dep. 48:10-18 (Ex. A to WestRock's Mot. for Summ. J., Doc. 20-2).

2. The puddle was not obstructed or disguised. *Id.* at 49:12-13.

3. Plaintiff knew caustic chemicals were stored in the area where he fell. *Id.* at 38:2-19.

4. Plaintiff knew chemicals were unloaded in the area where he fell. *Id.* at 37:21 – 38:1, 52:23-25.

5. Plaintiff watched a video during orientation, which took place before the accident, that warned him to be mindful of where he walked and to assume all liquids at the Mahrt Mill were potentially hazardous. *Id.* at 89:24 – 90:7, 91:7-19; Hinton Dep. 58:3-18 (Ex. B to WestRock's Mot. for Summ. J., Doc. 20-3); Havens Dep. 46:20 – 47:18 (Ex. D to WestRock's Mot. for Summ. J., Doc. 20-5).

6. And Plaintiff knew to assume all liquids at the Mahrt Mill were potentially hazardous. Eaton Dep. 49:20-25, 50:9-11 (Ex. A to WestRock's Mot. for Summ. J., Doc. 20-2).

Plaintiff has not disputed, and cannot dispute, any of these facts.

Despite Plaintiff's facts not being pertinent to the analysis and the material facts being undisputed, WestRock nevertheless responds below to some of Plaintiff's specific factual allegations that need to be placed in context so they are accurately portrayed and others that are at odds with the facts.

- "There was no mention at the daily safety meeting on the day of his accident of chemicals in close proximity to the area Eaton was working in . . . . Eaton had walked through the area many times but had never worked in that area prior to February 27, 2019." Pl.'s Br. at p. 2 (Doc. 25).

**RESPONSE:** The daily safety meetings are conducted by Plaintiff's employer, not WestRock. Eaton Dep. 31:15-17 (Ex. A to WestRock's Mot. for Summ. J., Doc. 20-2). Notwithstanding what might or might not have been said during that meeting, Plaintiff admits that mere hours before his fall he walked through the caustic unloading area to complete a job safety analysis. *Id*. at 36:8-13, 37:16-20, 95:17 – 96:2.

- "While installing barricades for the crane erection, Eaton slipped on a slippery, wet surface on a concrete incline and fell in a liquid." Pl.'s Br. at p. 2 (Doc. 25).

**RESPONSE:** Photos of the caustic unloading area show the topography of the area and speak for themselves. *See* Hinton Dep. 33:2-21 (Ex. B. to WestRock's Mot. for Summ. J., Doc. 20-3); Photos (Ex. 1).

- "Eaton did not think his actions were unreasonable or careless." Pl.'s Br. at p. 3 (Doc. 25).

**RESPONSE:** Plaintiff's opinion on the reasonableness of his conduct runs counter to the opinions of his co-workers and WestRock personnel who investigated the accident. *See* Hinton Dep. 62:14 – 63:7 (Ex. B to WestRock's Mot. for Summ. J., Doc. 20-3); Havens Dep. 52:19 – 53:19 (Ex. D to WestRock's Mot. for Summ. J., Doc. 20-5). Plaintiff's onsite supervisor testified that he expected Plaintiff to recognize the puddle as a potential hazard and to assume the substance in the puddle was potentially hazardous. Havens Dep. 52:19 – 53:5 (Ex. D to WestRock's Mot. for Summ. J., Doc. 20-5). Yet Plaintiff apparently did not meet those expectations, which WestRock determined to be the root cause of the accident. Hinton Dep. 62:14 – 63:7 (Ex. B to WestRock's Mot. for Summ. J., Doc. 20-3).

- "Eaton did not recall seeing any signs in the area where the injury occurred which warned of 'chemicals' or 'caustic' or 'dangerous' or 'stay away.'" Pl.'s Br. at p. 3 (Doc. 25).

**RESPONSE:** Eaton's recollection on what warning signs were present is belied by the facts. Photos of the caustic unloading area speak for themselves and show there is a warning sign stating:

DANGER
CAUSTIC
UNLOADING AREA

*See* Hinton Dep. 33:2-21 (Ex. B. to WestRock's Mot. for Summ. J., Doc. 20-3); Photos (Ex. 1). Railcars also have a "WARNING" sign on them and indicate that "SODIUM HYDROXIDE SOLUTION" is inside. *Id.*

5

- "Eaton believed any hazardous chemicals would have been kept in a 'containment area' . . . . Eaton did not believe where he fell and where the chemical hazard was present was a containment or confined area." Pl.'s Br. at p. 3 (Doc. 25).

**RESPONSE:** Plaintiff's beliefs are immaterial to whether the alleged hazard was open and obvious. *See infra* at 9-11. Plaintiff knew there was a puddle in the area, knew chemicals were used at the Mahrt Mill, knew caustic chemicals were stored in the tanker car in the caustic unloading area, knew chemical unloading took place in the area where the puddle was located, and knew to assume all liquids were potentially hazardous. Eaton Dep. 33:7-9, 37:21 – 38:19, 48:10-18, 49:12-13, 49:20-25, 50:7-11, 52:23-25 (Ex. A to WestRock's Mot. for Summ. J., Doc. 20-2).

## ARGUMENT

**I.   Regardless of whether WestRock should have anticipated the harm or whether Plaintiff subjectively appreciated the alleged risk he faced, the puddle he fell in was open and obvious.**

Plaintiff's principal argument against WestRock's request for summary judgment crumbles under the weight of the facts and a correct statement of the law. The undisputed facts and binding Alabama law demonstrate that a twenty-by-eight foot puddle was an open and obvious hazard to a person with Plaintiff's experience in industrial settings. *See* WestRock's Br. in Support of Mot. for Summ. J. at pp. 1-8, 11-15 (Doc. 20-1). Plaintiff's co-workers indeed understood the alleged hazard was present and that their employer was contractually obligated to warn Plaintiff of it. *See* Havens Dep. 13:8-20, 45:17 – 46:1, 47:1-18, 47:22 – 49:17 (Ex. D to

6

WestRock's Mot. for Summ. J., Doc. 20-5). This demonstrates that Plaintiff's employer knew of the alleged hazard, that it could have acted upon that knowledge, and that it was reasonable for WestRock to have expected Plaintiff's employer to take action. In that setting, WestRock owed no duty to Plaintiff under Alabama law. *See S. Ala. Brick Co., Inc. v. Carwie*, 214 So. 3d 1169, 1178 (Ala. 2016) ("The existence of a duty on the part of a premises owner to an employee of such a contractor depends, then, on what information the premises owner reasonably could have expected that contractor to have known and acted upon."). Even if that were not the case, Plaintiff himself had actual knowledge of the puddle before he stepped in it, which also ends the inquiry on whether it was open and obvious. *See* Eaton Dep. 48:10-18, 49:12-13 (Ex. A to WestRock's Mot. for Summ. J., Doc. 20-2).

In an attempt to avoid the effect his knowledge and his employer's knowledge has on his claims, Plaintiff asks the Court to apply the Restatement (Second) of Torts § 343A's exception to the open and obvious rule. *See* Pl.'s Br. at pp. 6-9 (Doc. 25). Under the Restatement's exception, according to Plaintiff, the open and obvious defense does not absolve a premises owner of liability if it "should anticipate the harm despite such knowledge or obviousness." *Id.* at p. 6 (internal quotation marks and emphasis omitted). Plaintiff points the Court to *Campbell v. Valley Grand Apartments*, 600 So. 2d 240 (Ala. 1992) and *Terry v. Life Insurance Co. of Georgia*, 551 So. 2d 385 (Ala. 1989) as support for his position that the exception is applicable

in Alabama and defeats WestRock's motion for summary. *See id.* at pp. 6-8. Plaintiff could not be more wrong. The Supreme Court of Alabama rejected his argument just last year, saying the argument "that a [premises owner] has a duty to eliminate open and obvious dangers or warn an invitee of such dangers if the invitor 'should anticipate the harm' – is <u>not</u> the law in Alabama." *Daniels v. Wiley*, 314 So. 3d 1213, 1224 (Ala. 2020) (emphasis in original); *see also Sessions v. Nonnenmann*, 842 So. 2d 649, 654 (Ala. 2002) ("This Court has expressly rejected the notion that an invitor owes a duty to eliminate open and obvious hazards or to warn the invitee about them if the invitor '*should anticipate the harm despite such knowledge and obviousness*." (emphasis in original)). Removing any doubt on the issue, the Court then expressly overruled *Campbell* and *Terry* on the point for which Plaintiff cites them: "To the extent that . . . Campbell, supra; Terry, supra; and other cases citing, quoting, and/or applying the Restatement (Second) of Torts § 343A may hold otherwise, they are overruled." *Daniels*, 314 So. 2d at 1225.

Plaintiff's contention that WestRock had "a duty to guard against, or otherwise alleviate, even known and obvious dangers if it [was] foreseeable that harm may still come to an invitee," in other words, is misplaced. *See* Pl.'s Br. at pp. 7 (Doc. 25). The alleged hazard—an admittedly unobstructed puddle in the caustic unloading area of a paper mill—was open and obvious. That negates any duty on the part of WestRock to either eliminate or warn Plaintiff about the puddle's existence.

8

What Plaintiff claims he subjectively believed about the puddle (and its contents) or the reasonableness of his actions does not change that outcome no matter how many times Plaintiff repeats that he did not know the puddle was a caustic substance. *See id.* at pp. 3, 8-9, 11 (Doc. 25). The openness and obviousness of an alleged hazard is determined using an objective standard. *Jones Food Co., Inc. v. Shipman*, 981 So. 2d 355, 362 (Ala. 2006) ("In a premises-liability setting, we use an objective standard to assess whether a hazard is open and obvious."). "[T]he question," thus, "is whether the danger should have been observed, not whether in fact it was consciously appreciated." *Id.* With this in mind, "the record need not contain undisputed evidence that the plaintiff-invitee consciously appreciated the danger at the moment of the mishap" to warrant the entry of summary judgment in WestRock's favor. *See Sessions*, 842 So. 2d at 653; *see also Jones Food Co., Inc.*, 981 So. 2d at 363 (holding that "[e]ven if we conclude that there is no evidence indicating that [the plaintiff] subjectively perceived a risk of injury before his fall, [the defendant] owed no common-law duty to [the plaintiff] because the attendant risk here was open and obvious").

Although this rule may deprive a plaintiff of recovery when he or she does not know the extent of the alleged hazard, the Supreme Court of Alabama has not hesitated to apply it in even extreme situations. The Court in *Owens v. Ganga Hospitality, LLC*, for instance, recently held that an alleged hazard—a curb near the

9

entrance of a hotel—was open and obvious to a reasonable person in the plaintiff's position even though the accident occurred at night and the plaintiff was blind in one eye and had severely impaired vision in the other. --- So. 3d ----, 2021 WL 5024454, at *1-4 (Ala. Oct. 29, 2021). The same can be said about the openness and obviousness of the alleged hazard in this case. *See* WestRock's Br. in Supp. of Mot. for Summ. J. at pp. 1-8, 11-15 (Doc. 20-1). It, in fact, was essentially said by Plaintiff's onsite supervisor:

> Q. So, is it fair to say that Mr. Eaton being the foreman and having signed off on the Job Safety Analysis, he was responsible for being familiar with the area in which he was working?
>
> A. Yes, sir.
>
> Q. And Mr. Eaton was responsible for recognizing the hazards in the area where he was working; correct?
>
> A. Yes, sir.
>
> Q. Would you expect Mr. Eaton to recognize a puddle of liquid in a chemical unloading area as a potential hazard?
>
> A. Yes, sir.
>
> . . .
>
> Q. Mr. Havens, would you, as the safety director for RMR that's on site at the facility, expect Mr. Eaton to assume that substances in a puddle might be hazardous?
>
> A. Yes, sir.

Havens Dep. 52:19 – 53:9, 53:15-19 (Ex. D to WestRock's Mot. for Summ. J., Doc. 20-5).

Simply put, Plaintiff's contention that "WestRock had a duty to alleviate known hazards if it was foreseeable that harm may result" is misses the mark irrespective of whether Plaintiff "had knowledge or should have had knowledge of the sodium hydroxide." *See* Pl.'s Br. at pp. 8-9. WestRock is entitled to summary judgment on Plaintiff's claims because the alleged hazard was open and obvious, meaning that WestRock did not owe a duty to Plaintiff to remedy the allege hazard or warn him about it.

## II. WestRock adequately warned Plaintiff and his employer about the alleged hazard despite not having a duty to do so.

Assuming WestRock had a duty to act at all related to the alleged hazard, which it did not, it had to either remove the hazard or warn contractors of its existence. *See Armstrong v. Ga. Marble Co.*, 575 So. 2d 1051, 1053 (Ala. 1991) ("The owner of premises owes a duty to business invitees to use reasonable care and diligence to keep the premises in a safe condition, *or*, if the premises are in a dangerous condition, to give sufficient warning so that, by the use of ordinary care, the danger can be avoided.") (emphasis in original). It did not have to do both. *See id.* This poses a problem for Plaintiff in that the undisputed evidence shows WestRock warned Plaintiff and his employer of the alleged hazard he encountered

thereby adequately discharging any duty WestRock may have had to Plaintiff as it relates to the puddle.

WestRock told Plaintiff and his supervisor never to assume that any liquid on the ground at the Mahrt Mill was water or another safe substance, but should instead always assume it was potentially dangerous. Eaton Dep. 89:24 – 90:7, 91:7-19 (Ex. A to WestRock's Mot. for Summ. J., Doc. 20-2); Hinton Dep. 58:3-18 (Ex. B to WestRock's Mot. for Summ. J., Doc. 20-3); Havens Dep. 13:8-20, 45:17 – 46:1, 47:1-21 (Ex. D to WestRock's Mot. for Summ. J., Doc. 20-5). By doing so, WestRock satisfied any duty it was subject to as a matter of law. *See S. Ala. Brick Co., Inc.*, 214 So. 3d at 1179 ("[W]hen a premises owner is found to owe a duty to warn, that duty is satisfied as a matter of law, when the contractor or supervisory personnel has knowledge of the dangerous condition."); *Armstrong*, 575 So. 2d at 1053 ("'[T]he owner or occupier of a particular property has a duty to warn the employees of an independent contractor who has undertaken to do work on the property, of the dangers that are hidden or inhere in that property, and . . . this duty is discharged if those in charge of the work for the independent contractor are given warning or have knowledge of the danger.'" (brackets and ellipsis in original)). Because it is uncontested that WestRock warned both Plaintiff and his employer, WestRock did not breach any duty allegedly owed to Plaintiff and summary judgment is warranted.

### III. Plaintiff still has not presented any evidence showing that WestRock's conduct rises to the level of wantonness.

Contrary to Plaintiff's assertion, he has not come close to presenting "substantial evidence of WestRock's wantonness." *See* Pl.'s Br. at p. 15 (Doc. 25). Plaintiff is of the view that WestRock acted wantonly by allegedly not cleaning up the puddle in accordance with company policy when it knew that sodium hydroxide was potentially hazardous. *See id.* at pp. 16-17. The trouble with Plaintiff's argument, however, is those facts do not amount to wantonness. If anything, WestRock having policies and procedures for the situation actually disproves Plaintiff's thesis since it exhibits WestRock's commitment to, rather than its alleged conscious disregard of, the safety of individuals working at the Mahrt Mill.

Ultimately, accepting Plaintiff's argument would improperly conflate the decidedly different standards for negligence and wantonness claims. *See S. Cent. Bell Tel. Co. v. Branum*, 568 So. 2d 795, 797 (Ala. 1990) ("'Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability.'"); *Boyd v. Wal-Mart Stores, Inc.*, 710 So. 2d 1258, 1260 (Ala. Civ. App. 1997) (per curiam) ("[W]antonness is not to be confused with negligence, nor is wantonness simply a higher degree of culpability than negligence."). Knowledge that the injury will likely or probably result from the conduct is the lynchpin of a wantonness claim and evidence of that is missing in this case. *See Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) ("'Wantonness' has been

13

defined by this Court as the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result." (emphasis in original)); *Berness v. Regency Square Assocs., Ltd.*, 514 So. 2d 1346, 1350 (Ala. 1987) ("In order to constitute wantonness, a failure to act must be accompanied by knowledge that someone is probably imperiled, and thus failure to act must be in reckless disregard of the consequences.").

The evidence on this issue, which has not been countered or even discussed, establishes that WestRock did not know a puddle of sodium hydroxide was present in the area where Plaintiff fell. *See* Eaton Dep. 65:7-9, 66:4-7 (Ex. A to WestRock's Mot. for Summ. J., Doc. 20-2). Nor is there any evidence that WestRock knew Plaintiff would disregard warnings and his training related to the need to assume liquids onsite were potentially hazardous. *See* WestRock's Br. in Supp. of Mot. for Summ. J. at p. 20 (Doc. 20-1). In the absence of such evidence, WestRock cannot be held liable for wantonness.

\* \* \*

WHEREFORE, premises considered, WestRock respectfully requests that the Court grant WestRock's motion and enter summary judgment in WestRock's favor on all claims asserted against it by Plaintiff.

                                      Respectfully submitted,

                                      /s/ Evan P. Moltz
                                      John A. Earnhardt
                                      Evan P. Moltz
                                      Attorneys for WestRock Coated Board, LLC

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
Suite 1700
Birmingham, AL 35203-2618
Telephone: 205.254.1000
Fax: 205.254.1999
Email: jearnhardt@maynardcooper.com
        emoltz@maynardcooper.com

## CERTIFICATE OF SERVICE

      I hereby certify I served on this the 13th day of December 2021, the foregoing on all counsel of record via e-mail and/or U.S. mail at the following address:

Evan G. Allen
BEASLEY, ALLEN, CROW,
      METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36104
evan.allen@beasleyallen.com

                                      /s/ Evan P. Moltz
                                      OF COUNSEL