IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| SCOTT EATON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 3:20-cv-860-SMD |
| ) | |
| WESTROCK COATED BOARD, LLC, ) | |
| ) | |
| Defendant. ) | |

**OPINION & ORDER**

**I.     INTRODUCTION**

This is a premises liability claim arising from a chemical spill at a paper mill in Cottonton, Alabama, owned by defendant Westrock Coated Board, LLC ("Westrock"). Plaintiff Scott Eaton ("Eaton") was working for a contractor, RMR Mechanical ("RMR"), that was overhauling a boiler at the paper mill. While setting up caution tape around a crane located outside the building housing the boiler, Eaton slipped and fell in a puddle that he thought was rainwater. The colorless liquid turned out to be sodium hydroxide solution, commonly known as lye,[1] and the caustic chemical burned his leg.

Eaton filed this personal injury lawsuit against Westrock in the Circuit Court of Russell County, Alabama, alleging claims of negligence, wantonness, and failure to warn. Compl. (Doc. 1-1). Westrock removed the case to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332. Not. of Removal (Doc. 1). Westrock moves for

---

[1] Chemical Datasheet, Sodium Hydroxide Solution, https://cameochemicals.noaa.gov/report?key=CH1499 (last visited April 19, 2022).

summary judgment on the grounds that (1) the hazard was open and obvious, (2) defendant gave adequate warnings of the hazard, (3) Eaton was contributorily negligent, and (4) there is no evidence of wantonness.  Motion for Summary Judgment (Doc. 20).  For the reasons below, Westrock's motion for summary judgment is granted on the wantonness claim and denied on all other grounds.

## II.     FACTUAL RECORD

Westrock hired RMR to replace modules in Recovery Boiler Number 2 at its Cottonton, Alabama, paper mill.  Def's Ex. B, Hinton Dep. at 15.  Eaton worked for RMR as a rigger.  Def's Ex. A, Eaton Dep. at 26-27.  His job was to work on the ground as part of a crane's crew attaching and detaching loads from the crane and making sure that the lift zone was clear.  *Id.*; Def's Ex. D, Havens Dep. at 17.

Contractors arriving at the Westrock paper mill are given an orientation consisting of a drug test, a 45-50 minute video, and a short written test.  Def's Ex. B, Hinton Dep. at 16.  The orientation was conducted by ACT, a contractor hired by Westrock.  *Id.*  Eaton attended this orientation.  Def's Ex. A, Eaton Dep. at 93; Def's Ex. D, Havens Dep. at 47.  Westrock contends that the video instructs contractors to always assume any substance on the ground is hazardous.  Def's Ex. B, Hinton Dep. at 58.  Eaton contends that "[n]owhere in the plant's orientation did they say to assume anything on the ground would be dangerous."  Def's Ex. A, Eaton Dep. at 49.  Westrock also provided its contractor safety policy to RMR's onsite safety director Grover Havens.  Def's Ex. D, Havens Dep. at 47-48.  Section 4.10 of this policy states that "Contractors will caution all employees to assume any unknown materials, drips, leaks, puddles may be hazardous."  *Id.* at 48-49.

On February 27, 2019, Eaton was setting up barricade tape around a crane preparing to begin work on the boiler. Def's Ex. B, Hinton Dep. at 39-40. The crane was located outside on Hollywood Boulevard right adjacent to the building containing Recovery Boiler Number 2. *Id.* at 26-27. There was a rail siding next to the road where tank cars were parked and unloaded. Def's Ex. A, Eaton Dep. at 37-38, 52; Def's Ex. B, Hinton Dep. at 27, 44; Def's Ex. C, Banks Dep. at 12; Def's Ex. D, Havens Dep. at 16. Eaton stepped toward the crane and slipped and fell on a wet, slightly-sloped concrete surface. Def's Ex. A, Eaton Dep. at 40-41; Def's Ex. B., Hinton Dep. at 39. He fell in some liquid that soaked into his pants. *Id.* Eaton estimated that the puddle was approximately 20 feet long and 8-10 feet wide. Def's Ex. A, Eaton Dep. at 49. Eaton thought that the liquid was rainwater from a rain storm the night before. *Id.* at 43, 50. The liquid was actually a 90% sodium hydroxide solution. Def's Ex. B, Hinton Dep. at 41. Sodium hydroxide solution is a colorless, caustic chemical. *Id.* at 29. The chemical burned Eaton's leg. Def's Ex. A, Eaton Dep. at 43.

### III. LEGAL STANDARD

#### A. Summary Judgment

Pursuant to the *Erie*[2] doctrine, a federal court sitting in diversity applies federal procedural law and state substantive law. *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1259-60 (11th Cir 2015). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[2] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue for trial. *Id.* at 323. If the moving party satisfies this burden, the non-moving party must come forward with record evidence showing that a material fact is genuinely in dispute. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The legal elements of a claim or defense determine which facts are material and which are irrelevant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

A court must view the proffered evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the facts in the nonmovant's favor. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1242-43 (11th Cir. 2001). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### B. Premises Liability

Under Alabama law, a premises owner's liability for injuries caused by the condition of the property turns on the legal status of the injured party. *McClurg v. Birmingham Realty Co.*, 300 So. 3d 1115, 1118 (Ala. 2020); *S. Ala. Brick Co. v. Carwie*, 214 So. 3d 1169, 1175 (Ala. 2016). Contractors performing work on the premises are considered business invitees. *S. Ala. Brick Co.*, 214 So. 2d at 1176-77. The owner's "'duty to business invitees is to use reasonable care and diligence to keep the premises in a safe condition, or, if the premises are in a dangerous condition, to give sufficient warning so

that by use of ordinary care, the danger can be avoided.'" *McClurg*, 300 So. 3d at 118 (quoting *Armstrong v. Ga. Marble Co.*, 575 So. 2d 1051, 1053 (Ala. 1991)); *S. Ala. Brick Co.*, 214 So. 3d at 1176 (quoting same).

The owner's duty to keep an area safe or provide adequate warnings is limited to hidden defects that are not known to the invitee and would not be discovered in the exercise of ordinary care. *Daniels v. Wiley*, 314 So. 3d 1213, 1223 (Ala. 2020); *McClurg*, 300 So. 3d at 118; *S. Ala. Brick Co.*, 214 So. 3d at 1176. Where the danger is open and obvious, i.e., where the invitee knew or should have known of the hazard through the exercise of reasonable care, the owner has no duty to make the area safe or give warnings. *Id.*

### C. Contributory Negligence

Contributory negligence is an affirmative defense on which the defendant bears the burden of proof. *Robertson v. Travelers Inn*, 613 So. 2d 376, 380 (Ala. 1993). "To obtain summary judgment based on contributory negligence, the moving party must show two things: (1) that the plaintiff put himself in danger's way and (2) that the plaintiff had a conscious appreciation of the danger at the moment the incident in question occurred." *Lands v. Ward*, __So. 3d __, 2021 WL 2622056, at *8 (Ala. June 25, 2021). *See also, Crook v. Allstate*, 314 So. 3d 1188, 1199 (Ala. 2020) (holding same).

### D. Wantonness

To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. *Hilyer v. Fortier*, 227 So. 3d 13, 22 (Ala. 2017). To be

actionable, that act or omission must proximately cause the injury for which the plaintiff complains. *Id.* at 22-23 (citing *Smith v. Davis*, 599 So. 2d 586 (Ala. 1992)).

## IV. ANALYSIS

### A. Open and Obvious

Westrock argues that the puddle of sodium hydroxide solution was an open and obvious hazard. Def's Opening Br. (Doc. 20-1) at 11-15; Def's Reply Br. (Doc. 27) at 1-11. This is an affirmative defense on which Westrock bears the burden of proof. *McClurg*, 300 So. 3d at 1119. For a hazard to be open and obvious, both the condition and the risk it presents must be apparent to, and would be recognized by, a reasonable person in the position of the invitee exercising ordinary perception, intelligence, and judgment. *Owens v. Ganga Hosp., LLC*, __ So. 3d __, 2021 WL 5024454, at *2-4 (Ala. Oct. 29, 2021). This is an objective, reasonable person standard. *Id.* at *4; *McClurg*, 300 So. 3d at 118. Westrock does not have to show that Eaton subjectively appreciated the danger. *Daniels v. Wiley*, 314 So. 3d 1213, 1224 (Ala. 2020); *McClurg*, 300 So. 3d at 1118. The Alabama Supreme Court instructs that the issue of whether a hazard is open and obvious is generally a fact question for the jury that should not be resolved on summary judgment. *McClurg*, 300 So. 3d at 119 (collecting cases).

Westrock has failed to carry its burden of showing through undisputed record evidence that the danger presented by the puddle of sodium hydroxide solution would be apparent to, and would be recognized by, every reasonable person in Eaton's position. The record shows that Eaton was working as a rigger on a large crane. Def's Ex. A, Eaton Dep. at 26-27; Def's Ex. D, Hayden Dep. at 17. A rigger works on the ground next to the crane

6

and is responsible for attaching and detaching loads from the crane and making sure that the lift zone is clear. *Id.* The crane was located outside on a road next to the building containing the recovery boiler that RMR was working on. Def's Ex. A, Eaton Dep. at 28; Def's Ex. B, Hinton Dep. at 26-27; Def's Ex. D, Havens Dep. at 15-17. There was a rail siding next to the road where tank cars were parked and unloaded. Def's Ex. A, Eaton Dep. at 37-38, 52; Def's Ex. B, Hinton Dep. at 27, 44; Def's Ex. C, Banks Dep. at 12; Def's Ex. D, Havens Dep. at 16.

Eaton was installing barricade tape in the area around the crane when he slipped on a wet sloped concrete surface and fell into a large puddle of liquid. Def's Ex. A, Eaton Dep. at 40-41, 48; Def's Ex. B, Hinton Dep. at 26-27. Eaton estimated the puddle to be approximately 20 feet long and 8-10 feet wide. Def's Ex. A, Eaton Dep. at 49. The liquid had no noticeable color or smell, and Eaton assumed that it was rainwater from a storm the night before. Def's Ex. A, Eaton Dep. at 43, 50; Def's Ex. B, Hinton Dep. at 29. The liquid turned out to be sodium hydroxide solution. Def's Ex. A, Eaton Dep. at 43.

Although the presence of the puddle would be apparent to a reasonable person, the risk it presented would not. There was nothing unusual in the puddle's appearance or odor that would put a reasonable person on notice that it was a dangerous chemical spill rather than accumulated rainwater. The Court rejects Westrock's argument that a "seasoned industrial construction worker" like Eaton would always assume that any liquid on the ground outside at an industrial facility is potentially hazardous, making every chemical spill at such a facility open and obvious as a matter of law. Def's Opening Br. (Doc. 20-1) at 14-15. Eaton testified that he worked outside all the time, and that working in the

rain, mud, ice, or snow and stepping in mud or rainwater was a routine part of his job. Def's Ex. A, Eaton Dep. at 50.  He also testified that in his experience, dangerous chemicals were unloaded in a special containment area with a wall to contain any spills, and there was nothing like that in the area where he fell.  *Id.* at 38.  At the very least, viewing the facts in the light most favorable to the non-movant, Eaton's testimony presents a material question of fact for the jury concerning what a reasonable person in his position would perceive as dangerous on a job site.

### B. Failure to Warn

Next, Westrock argues that, even if the sodium hydroxide spill was not open and obvious, it satisfied its duty to warn of the spill by instructing both Eaton and RMR's on-site safety manager to assume that any liquids on the ground at the paper mill were potentially hazardous.  Def's Opening Br. (Doc. 20-1) at 15-16; Reply Br. (Doc. 27) at 11-12.  Under Alabama law, a property owner has a duty to warn contractors of hidden dangers on the property that the owner is aware of and the contractor is not.  *S. Ala. Brick Co.*, 214 So. 3d at 1176.  The warning must be sufficient to allow the contractor to avoid the hidden danger through the use of ordinary care.  *Id.; McClurg*, 300 So. 3d at 1118.

The record establishes that contractors arriving at the paper mill received in-processing that included drug testing and an orientation video followed by a brief written test.  Def's Ex. B, Hinton Dep. at 16; Def's Ex. A, Eaton Dep. at 89-92.  However, the content of the orientation is in dispute.  Eaton testified that "[n]owhere in the plant's orientation did they say to assume anything on the ground could be dangerous."  Def's Ex.

A, Eaton Dep. at 49.  Viewed in the light most favorable to Eaton, this creates a genuine issue of material fact.

More fundamentally, the adequacy of any warning given by Westrock to RMR or Eaton is an issue for the jury.  A warning must be sufficiently clear and specific to allow an invitee to avoid a particular hidden hazard by using ordinary caution.  Whether a blanket warning during orientation to assume that any unknown materials, drips, leaks, or puddles may be hazardous is sufficient to adequately warn a contractor that there was a large spill of a dangerous chemical on the ground near his work area is a question of fact for the jury. *Pittman v. Hangout in Gulf Shores, LLC*, 293 So. 3d 937, 944 (Ala. Civ. App. 2019) (whether use of contrasting yellow paint gave adequate warning of the presence of a step to patrons in a restaurant is a question of fact for the jury).  *See generally, W. Ry. of Ala. v. Russell*, 144 Ala. 142, 152 (Ala. 1905) ("[m]ere information in advance that the service generally, or a particular thing connected with it, was dangerous, might give . . . no adequate notice or understanding of the kind and degree of danger which would necessarily attend the actual performance of [the] work").

        **C.**    **Contributory Negligence**

Westrock argues that even if it breached a duty to Eaton, his claims are barred by contributory negligence.  Def's Opening Br. (Doc. 20-1) at 17-18.  To obtain summary judgment on contributory negligence, Westrock must present undisputed record evidence establishing (1) that Eaton put himself in danger's way and (2) that he had a conscious appreciation of the danger at the moment he fell in the sodium hydroxide solution. *Lands*, 2021 WL 2622056, at *8; *Crook*, 314 So. 3d at 1199.

As explained above, Eaton testified that he thought he was stepping in a puddle of water from a rain storm the night before when he slipped and fell in the sodium hydroxide solution. Def's Ex. A, Eaton Dep. at 43, 50. Eaton's testimony creates a genuine issue of material fact on both elements of the contributory negligence test.

### D.   **Wantonness**

Finally, Westrock argues that Eaton lacks sufficient evidence of wantonness to survive summary judgment. Def's Opening Br. (Doc. 20-1) at 18-21; Reply Br. (Doc. 27) at 13-14. The Court agrees. "Rule 56 mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. To establish a claim of wantonness under Alabama law, the plaintiff must prove the following elements: (1) that the defendant consciously and intentionally did some wrongful act or omitted some known duty, (2) with reckless indifference to the consequences, and (3) that the act or omission was the proximate cause of the plaintiff's injury. *Hilyer*, 227 So. 3d at 22.

In response to Westrock's motion, Eaton produced evidence that Westrock knew of the dangers of sodium hydroxide and trained its employees to report and clean up chemical spills. Reply Br. (Doc. 25) at 16. Despite this, Westrock's employees failed to report and clean up the spill that injured Eaton. *Id.* This evidence is insufficient to establish that Westrock's act or omission was done consciously and intentionally or that it acted with reckless indifference to the consequences. Eaton has produced no evidence of the state of mind of Westrock's employees at the time of the spill or even whether any employees were

present when the spill occurred. Accordingly, Westrock is entitled to summary judgment on Eaton's wantonness claim and it is DISMISSED.

## VI. **CONCLUSION**

For the above-stated reasons, Westrock's motion for summary judgment (Doc. 20) is GRANTED on Eaton's Wantonness claim and DENIED on all other grounds.

Done this 25th day of April, 2022.

_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE